UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH DAKOTA
SOUTHERN DIVISION

---

| | |
|---|---|
| LINDA D. ERICKSON, as Special Administrator of the ESTATE OF THOMAS R. ERICKSON,<br>             Plaintiff<br><br>vs.<br><br>FRANKEN CUSTOM, INC.; and CALUMET MANURE MANAGEMENT, INC.,<br>             Defendants | 4:24-cv-4061<br><br>MEMORANDUM OPINION AND ORDER DENYING MOTION FOR SUMMARY JUDGMENT |

---

Pending before the Court is Defendant Calumet Manure Management, Inc.'s (Calumet) motion for summary judgment, (Doc. 14). Plaintiff resists the motion, (Doc. 27), as does Defendant Franken Custom, Inc., (Franken) (Doc. 26). Defendant Calumet objects to the Court's consideration of Franken's submission on the grounds that Franken is not an adverse party. (Doc. 31). The Court has read Franken's brief, given that Calumet addressed it. (Doc. 31, PgID 523).

**BACKGROUND**

This lawsuit arose as the result of a tragic accident in Lincoln County, S.D. Thomas Erickson, Plaintiff's decedent, was driving on a rural road when he was hit and killed by Hendrik Geustyn, who allegedly failed to stop at a stop sign. (Doc.

1

1-1). Geustyn also was seriously injured. At the time of the accident, Geustyn was working for Defendant Franken and operating a tractor to haul silage.

Defendant Calumet is owned by Richard Rausch. Geustyn, a citizen of South Africa, was in the United States pursuant to an H-2A visa, which authorizes employers in this country to hire farmworkers from other countries. (Doc. 22-4). Calumet hired Geustyn to work in its manure operation, which is housed in Calumet, Iowa. (Id.). Calumet services farms in the area, including in South Dakota. (Id.). Calumet is required to pay the transportation costs for its employees on the H-2A visa to come to the United States, and also must provide housing and transportation while the individuals are in this country. 20 C.F.R. § 655.122 (setting forth the requirements for job offers). *See* Doc. 22-3, PgID 236. The employer has a contract with the worker which requires payment by the employer of at least three-fourths of the amount of the contract. (Id.). Geustyn arrived in May 2023 and worked satisfactorily for Calumet.

Franken Custom is a Sioux City, Iowa, company whose work involves growing and cutting silage. (Doc. 22-6). Jake Franken is the owner. Franken's business is complementary to Calumet's in the sense that the manure spreading and silage cutting go hand-in-hand. The businesses run by Calumet and Franken are separate, however. Franken and Calumet had some customers in common but the work performed for them was different and occurred at different times. (Doc. 22-

4, 22-6). Relevant to this case is that when Calumet has a low volume of work, Franken is at its busiest. (Id.). Therefore, the two businesses had cooperated for a few years such that during Calumet's down time, Franken would call to see if any Calumet workers wished to work for Franken during its busy time. (Id.; Doc. 22-4). Geustyn was one of the workers who went to Franken Custom, and was employed driving Franken's tractor at the time of the accident.

The agreement between Calumet and Franken was that Calumet would pay its employees who worked for Franken through its payment system based on time slips submitted, and Franken would reimburse Calumet the amount paid to the employees. (Doc. 22-5, PgID 353-54). The pay stubs attached to the response to this motion indicate that Geustyn worked long hours for Calumet and Franken. (Doc. 22-1, 22-2). Franken assigned and supervised the work the employees would perform while working at his operation. (Doc. 22-4, 22-6). Calumet was not involved in the assignments or supervision. Franken paid for hotels and meals while the H-2A visa workers were at a job site for Franken. (Doc. 22-5, PgID 355, 371). On the day of the accident, Franken was performing work in Lincoln County, S.D., and Geustyn was driving Franken's equipment. (Doc. 22-6).

As this litigation proceeded, the owners and certain employees of Calumet and Franken were deposed. Jake Franken, the owner of Franken Custom, testified that he considered Geustyn to be his employee on the day of the accident. (Doc.

22-6, PgID 415). Kelly Franken, office manager for Franken Custom also did. (Doc. 22-7, PgID 434, 444). Hendrik Geustyn agreed that while he was working for Franken Custom he was not doing work for Calumet. (Doc. 22-8, PgID 452). This testimony indicates that, although Calumet brought Geustyn to the United States to work for it and he had done so for several months, the perception of at least some employees was that Geustyn was Franken's employee at the time of the accident. (Id.). When Franken's previous attorney, who is not counsel in this case, sought insurance coverage for Franken, he described Geustyn as Franken's employee. (Doc. 17-6, PgID 169, 172). The Court points out these facts because, although it is clear Geustyn was Franken's employee at the time of the accident, the problem before the Court is whether he also was Calumet's employee at that time. The further question is whether, if so, Geustyn was working within the scope of his employment at the time.

## LEGAL STANDARD

### A. Summary Judgment

According to Rule 56(c) of the Federal Rules of Civil Procedure, summary judgment shall be entered "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). *Garrison v. ConAgra Foods*

*Packaged Foods, LLC*, 833 F.3d 881, 884 (8th Cir. 2016) (citing Fed. R. Civ. P. 56(c)). As the Eighth Circuit has noted, "[S]ummary judgment is not disfavored and is designed for every action." *Briscoe v. Cnty. of St. Louis*, 690 F.3d 1004, 1011 n.2 (8th Cir. 2012) (quoting *Celotex v. Catrett*, 477 U.S. 317, 327 (1986)). When a court is asked to review a motion for summary judgment it examines "the record in the light most favorable to the nonmoving party ... drawing all reasonable inferences in that party's favor." *Whitney v. Guys*, 826 F.3d 1074, 1075 (8th Cir. 2016) (citing *Hitt v. Harsco Corp.*, 356 F.3d 920, 923-24 (8th Cir. 2004)). *See also Kirkendall v. Shur-Co*, 2007 WL 1574423, *1 (D. S. D. May 29, 2007); *Tammen v. Tronvold*, 965 N.W.2d 161, 168 (S.D. 2021).

The moving party bears the burden of showing both the absence of a genuine issue of material fact and its entitlement to judgment as a matter of law. Fed. R. Civ. P. 56(c); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242 (1986). Once the moving party has met its burden, the non-moving party may not rest on the allegations of its pleadings but must set forth specific facts, by affidavit or other evidence, showing that a genuine issue of material fact exists. Fed. R. Civ. P. 56(e); *Anderson*, 477 U.S. at 257; *City of Mt. Pleasant v. Associated Elec. Coop., Inc.*, 838 F.2d 268, 273–74 (8th Cir.1988). See also *Pinchas v. USA Deaf Sports Federation, Inc.*, 457 F.Supp.2d 937 (D.S.D. 2006). If there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law, the

court will grant summary judgment. *Running Shield v. Huether*, 2018 WL 3651353, *2 (D.S.D. Aug. 1, 2018).

## B. Conflict of Laws

In the case at bar, both South Dakota and Iowa Parties are involved, and the Court must address which law applies. As Calumet points out, in *SPV-LS, LLC v. Transamerica Life Insurance Company*, the court stated that "in a diversity action, the federal district court applies the choice of law rules of the State in which the court sits." 2016 WL 1466529, *2 (D.S.D. April 15, 2016). In turn, Plaintiff points out that South Dakota uses "the most significant relationship test" in deciding which state's law applies in resolving tort claims. *Andrews v. Ridco, Inc.*, 863 N.W.2d 540, 554 (S.D. 2015).

In *Burhenn v. Dennis Supply Co.*, the South Dakota Supreme Court quoted the Restatement's factors relevant to the assessment of the most significant relationship as follows:

(a) the place where the injury occurred,

(b) the place where the conduct causing the injury occurred,

(c) the domicil, residence, nationality, place of incorporation and place of business of the parties, and

(d) the place where the relationship, if any, between the parties is centered.

685 N.W.2d 778, 784 (S.D. 2004) (quoting Restatement (Second) of Conflict of Laws § 145 (1971)).

The Court determines that South Dakota law governs this dispute, given that the place of the injury and where the conduct occurred is South Dakota; Plaintiff is a South Dakota resident; both Defendants are Iowa residents; the locus of the job site for Franken's crew on the date of the accident was South Dakota; and there is no relationship between the Parties other than this lawsuit. These factors indicate that South Dakota has the most significant relationship to the events at issue in this case. The Parties do not dispute this issue. (Doc. 16, PgID 103; Doc. 27, PgID 498; Doc. 28).

### C. Law of Agency

As the Parties agree, the primary question in this case is whether Geustyn was solely an employee of Franken or also was an employee of Calumet at the same time. In *Black Hills Adventure Lodging, LLC v. South Dakota Department of Labor and Regulation,* a workers compensation case, the court analyzed whether an individual was an employee for purposes of reemployment assistance, and first assessed whether the employer exercised the right of control. 17 N.W.3d 893, 899 (S.D. 2025) (citing *Egemo v. Flores*, 470 N.W.2d 817, 820 (S.D. 1991)). The court stated the pertinent factors as the following: "(1) Direct evidence of the right of control; (2) The method of payment; (3) The furnishing of major items of

equipment; and (4) The right to terminate the employment relationship at will and without liability." *Id.* at 899. The court added that if an entity does not control "the hours or specific performance of a job 'a mere general finding that the employer exercises control over the project by coordinating the duties necessary for its completion does not establish control dispositive of an employer/employee relationship.'" *Id.* at 900 (quoting *Egemo*, 470 N.W.2d at 821). The court went on to analyze how the employee was paid, who supplied the equipment, and whether the parties "have a right to terminate the employment relationship at will and without liability." *Id.* at 901.

If the court determines that an individual qualifies as an employee, the next question is whether the action in question was within the scope of the employment. *Tammen*, 965 N.W.2d at 169 (citing *Kirlin v. Halverson*, 758 N.W.2d 436 (S.D. 2008)). In making this assessment, the court must evaluate: "(1) 'whether the purpose of the act was to serve the principal' and (2) 'whether the act was foreseeable.'" *Id.* (citing *Bernie v. Cath. Diocese of Sioux Falls*, 821 N.W.2d 232, 237 (S.D. 2012)). The foreseeability analysis demands evaluation of whether the employee's conduct was "so unusual or startling that it would be unfair to include the loss caused by the injury among the costs of the employer's business." *Id.* (citing *Kirlin*, 758 N.W.2d at 444). *Tammen* added that most often it is a "question

8

of fact for the jury" whether an employee's act was within the scope of employment. *Id.* (citing *Hass v. Wentzlaff*, 816 N.W.2d 96, 103 (S.D. 2012)).

The complicating factor in the present case is that two employers are involved as named Defendants, Calumet and Franken. This Court has recognized in previous cases that "on many occasions" the South Dakota Supreme Court has consulted the Restatement (Second) of Agency for guidance. *Medina v. Botello*, 595 F.Supp.3d 838, 847 (D.S.D. 2022). In this case, the Court will do likewise.

As has long been recognized, "A person may be the servant of two masters, not joint employers, at one time as to one act, if the service to one does not involve abandonment of the service to the other." Restatement (Second) Agency § 226 (October 2024 update) (Servant Acting for Two Masters). The Restatement advises that, "A person, however, may cause both employers to be responsible for an act which is a breach of duty to one or both of them." *Id.* at cmt. a. Furthermore, a person "may be the servant of two masters, not joint employers as to the same act, if the act is within the scope of his employment for both." *Id.*

The Restatement continues in its subsequent section that, "A servant directed or permitted by his master to perform services for another may become the servant of such other in performing the services. He may become the other's servant as to some acts and not to others." *Id.* § 227 (Servant Lent to Another Master). Pertinent to the current discussion is the comment that unless there is contrary

9

evidence, "there is an inference that the actor remains in his general employment so long as, by the service rendered another, he is performing the business entrusted to him by the general employer." *Id.* at cmt. b. Factors the Restatement suggests are relevant to the inquiry include, but are not limited to the following: the extent of control the master exercises over the employee's work; the skill required; the length of time of the employment; the method of payment, whether by time or the job; whether the work is a regular part of the employer's business; whether the parties believe they are creating the relation of master and servant. *Id.* § 220 (Definition of Servant).

## ANALYSIS

Defendant Calumet arranged for the H-2A visa for Geustyn by obtaining a list of applicants, conducting interviews, and determining that Geustyn would be able to perform the desired work for the company. (Doc. 22-4, 22-5). Calumet provided housing and a vehicle. (Doc. 22-4). Pursuant to 20 C.F.R. § 655.122(i)(1)(iv), Calumet was required to pay Geustyn at least three-fourths of the amount of the contracted-for hours. (Doc. 22-3). The pay records indicate that Geustyn worked many hours for Calumet from May-August 2023. During its slow period, Calumet was willing to assist Franken in obtaining workers during its busy time. (Doc. 22-4). Calumet permitted all four of its South African workers to join Franken's operation. The pay was run through Calumet's business office, with

Franken reimbursing Calumet for hours worked for Franken. (Doc. 22-4, 22-5). Calumet's workers compensation covered Geustyn. (Doc. 22-5, PgID 364). These factors demonstrate that Calumet was the general employer for Geustyn.

While Geustyn was working for Franken, he was provided a hotel room and meals by Franken close to the job site. (Doc. 22-5, PgID 355, 371). He was paid at the same rate as at Calumet. Daily work assignments and supervision were done by Franken's employees. (Doc. 22-6, 22-7). Calumet had no role in the daily work Geustyn was performing for Franken, and in particular, at the time of the accident involving Mr. Erickson. (Doc. 22-4, 22-6).

The Calumet and Franken employees, as well as Franken's previous counsel, understood that Geustyn was working for Franken while at Franken's job sites. That is undisputed, leaving the only question whether he was also employed by Calumet at the time. While Calumet exercised no daily control over Geustyn's work for Franken, Calumet did facilitate his pay. The rental of the house by Calumet appears to have continued even while Geustyn stayed in a hotel near Franken's job site. Calumet's obligation to pay Geustyn at least three-fourths of the contract amount continued; Franken's contribution potentially benefitted Calumet, although it is just as likely only the employees benefitted by receiving extra compensation. Calumet could order the return of its employees from Franken and could fire them; Franken also could fire them only from his employ and only

based on the work for Franken. In the Court's view, Franken was the employer for Geustyn and directed his work on the day of the accident, while Calumet remained Geustyn's general employer in accordance with the H-2A visa.

The facts in this case are close with respect to the summary judgment motion. The Court recognizes that the non-moving party has all reasonable inferences drawn in its favor. It also is the case that whether an individual's actions are within the scope of employment ordinarily is a jury question. Giving the Plaintiffs the benefit of all inferences, the Court denies Calumet's motion for summary judgment.

Accordingly, IT IS ORDERED that Defendant Calumet Manure Management, Inc.'s motion for summary judgment, (Doc. 14), is denied.

Dated this 11th day of June, 2025.

BY THE COURT:

Lawrence L. Piersol
United States District Judge